IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

KEVIN R. NICHOLS, )
 )
    Plaintiff, )
 )
v. ) Case No. CIV-14-179-R
 )
CAROLYN W. COLVIN, Acting )
Commissioner, Social Security )
Administration, )
 )
    Defendant. )

# REPORT AND RECOMMENDATION

Defendant Acting Commissioner (Commissioner) issued a final decision denying Kevin Nichols' (Plaintiff) application for disability insurance benefits under the Social Security Act, and Plaintiff seeks judicial review under 42 U.S.C. § 405(g). United States District Judge David L. Russell referred this matter for proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (b)(3), and Fed. R. Civ. P. 72(b), and it is now before the undersigned Magistrate Judge. The undersigned has reviewed the pleadings, administrative record (AR), and parties' briefs, and recommends that the court reverse and remand the Commissioner's decision.

I.  **Administrative proceedings.**

In his application, Plaintiff alleged that his impairments became disabling in May 2005. AR 219-223.[1]  The Social Security Administration (SSA) denied Plaintiff's claim, and at his request, an ALJ conducted a hearing. *Id.* at 67-106.  In her January 2010 decision, the ALJ found that Plaintiff was not disabled through September 30, 2006, his date last insured. *Id.* at 115, 121.  The SSA Appeals Counsel remanded Plaintiff's case, noting that Plaintiff's date last insured was December 31, 2007, *id.* at 128-29, and the ALJ conducted a second hearing. *Id.* at 28-66.  At that hearing, Plaintiff amended his alleged onset date to January 6, 2006. *Id.* at 33.  In May 2013, the ALJ again found that Plaintiff was not disabled through his insured status date. *Id.* at 22.  The SSA Appeals Council declined Plaintiff's request for review, *id.* at 1-6, and Plaintiff now seeks review in this Court.  Doc. 1.

II.  **Disability determination.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner applies a five-

---

[1]   For the parties' briefs, the undersigned's page citations refer to this Court's CM/ECF pagination.  Page citations to the AR refer to that record's original pagination.

step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520 (b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Because Plaintiff seeks only disability insurance benefits, he had to establish his disability prior to the expiration of his insurance status. *See Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996). To that end, Plaintiff bears an initial burden of proving that sometime between January 6, 2006, and December 31, 2007, he had one or more severe impairments. *See* 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If he succeeds, the ALJ will conduct a residual functional capacity (RFC)[2] assessment at step four to determine what, if anything, Plaintiff could have still done despite his impairments. *See* 20 C.F.R. § 404.1545(e); *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1048 (10th Cir. 1993). Then, if Plaintiff makes a prima facie showing that he could not have engaged in prior work activity, the burden shifts to the Commissioner to show Plaintiff retained the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *See Turner*, 754 F.2d at 328; *Channel v. Heckler*, 747 F.2d 577, 579 (10th Cir. 1984).

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

3

### III. Plaintiff's claims.

Plaintiff alleges that the ALJ committed reversible error in failing to consider and discuss significantly probative evidence from Dr. Cyndra Pilkington. Doc. 13, at 4-8. The undersigned agrees, and has therefore elected not to address Plaintiff's remaining claims. *See Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand.").

### IV. Analysis.

#### A. Standard for review.

This Court's review is limited to whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. *See Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). The ALJ's "failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Andrade*, 985 F.2d at 1047 (citation omitted).

#### B. The ALJ's relevant findings.

As relevant to this analysis, the ALJ found that Plaintiff last met the insured status requirement on December 31, 2007, and that through that date he had severe "back disorder; status post cervical fusion, degenerative

joint disease of the cervical spine; and headaches." AR 13. The ALJ considered, but found non-severe, Plaintiff's "mental impairment of memory disorder." *Id.* at 15. The ALJ did not incorporate any mental limitations into Plaintiff's RFC, finding only that Plaintiff could have performed sedentary work with some exertional limitations. *Id.* at 17. Ultimately, the ALJ opined that Plaintiff could not have returned to his past relevant work, but could have performed unskilled work existing in significant numbers in the national economy. *Id.* at 21-22.

### C. The ALJ's failure to consider significantly probative evidence.

It is widely understood that an ALJ may not pick and choose among the record, ignoring evidence that does not support her position. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). To that end, an ALJ *must* consider all significantly probative evidence in the record. *See* 20 C.F.R. § 404.1520(a)(3).

The ALJ relied on Dr. Pilkington's December 2005 report to find Plaintiff's mental impairment non-severe. AR 15-16. In so doing, the ALJ discussed Plaintiff's IQ and "global assessment of functioning score," *id.* at 16, but did not discuss Dr. Pilkington's findings that Plaintiff could not: (1) see "a two dimensional object and convert[] that to a three dimensional object," or (2) "complete simple math questions on a verbal basis" – i.e., "had

5

no auditory capability to complete simple math tasks." *Id.* at 407. Dr. Pilkington opined that these limitations were indicators of "neurological impairment" and recommended that Plaintiff receive "career aptitude testing" to determine the "best career match," considering Plaintiff's "closed brain injury, psychical restrictions, and memory and perceptual impairments." *Id.* at 407-08. Again, the ALJ did not discuss any of these findings.

More importantly, the ALJ completely ignored Dr. Pilkington's March 2006 evaluation, which she performed to "further clarify[] [Plaintiff's] diagnosis and to assist in determining his limitations and functionality." *Id.* at 409. After performing numerous tests, Dr. Pilkington found that: (1) Plaintiff's "visuoperceptual and constructional skills including visual memory" are "very impaired," and (2) he has impairments in "immediate memory and delayed memory." *Id.* at 410-11. The psychologists opined that Plaintiff's score results "are consistent with a person that has had a closed brain/traumatic brain injury." *Id.* at 411. Finally, Dr. Pilkington found that while Plaintiff "has the basic skills necessary for success," he "will need . . . special accommodations for this success," including: (1) "[t]he assistance of tutorial services," (2) "[v]isual to auditory lessons whenever possible," (3) "[e]xtra time on all written exams," and (4) "[a]ppropriate mechanical devices that would aid [him] in comprehending the written word and numbers." *Id.*

6

Again, Dr. Pilkington noted that Plaintiff would need to find a career match for individuals suffering "memory and perceptual impairments." *Id.* at 413.

Even though Dr. Pilkington was not Plaintiff's treating physician, the ALJ "was still required to consider [her] opinion, . . . and to provide specific, legitimate reasons for rejecting it[.]" *Doyal v. Barnhart*, 331 F.3d 758, 764 (10th Cir. 2003) (citations omitted). The ALJ instead ignored the evidence, and in doing so she did not include any limitations in Plaintiff's RFC related to his memory and perceptual impairments.[3] AR 15, 17.

**D.  The Commissioner's arguments for affirmance.**

The Commissioner tries unsuccessfully to salvage the ALJ's decision on three grounds.

**1.  V. Paulette McNair's opinion.**

To begin, the Commissioner points to Ms. McNair's opinion that: "Plaintiff's expressed medical technology interest appeared realistic in terms of his demonstrated academic, intellectual, and aptitude potential and [that

---

[3] Initially, Plaintiff argues that the ALJ's error lies in her finding at step two that Plaintiff does not have a severe mental impairment. Doc. 13, at 4-7. However, the Tenth Circuit has held that "once an ALJ finds that a claimant has at least one severe impairment, [s]he does not err in failing to designate other disorders as severe at step two, because at later steps the agency 'will consider the combined effect of all of claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.'" *Barrett v. Astrue*, 340 F. App'x 481, 484 (10th Cir. 2009) (citing 20 C.F.R. § 404.1523) (internal brackets omitted). So, as Plaintiff ultimately argues, Doc. 13, at 7-8, the ALJ's error here was in the RFC analysis.

7

she] expected him to be successful in pursuing a trade or technical career training." Doc. 14, at 19 (citing AR 873). The undersigned finds this argument unpersuasive. First, the ALJ did not rely on this document in implicitly rejecting any mental impairment limitations in Plaintiff's RFC. AR 13-20. Second, Ms. McNair works at a career planning center and is a "Sr. Vocational Evaluator," *id.* at 873, not an acceptable medical source. *See* 20 C.F.R. § 404.1513(a) (listing acceptable medical sources). Third, there is no indication that Ms. McNair tested Plaintiff's memory or perceptual skills. AR 871-73. Thus, the undersigned finds no basis for concluding that Ms. McNair's opinion salvages the ALJ's error in ignoring the bulk of Dr. Pilkington's findings.

### 2. The State agency physician's opinion.

The Commissioner also argues that the ALJ gave great weight to State agency physician Dr. Cynthia Kampschaefer's opinion that Plaintiff has only mild restrictions in activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and has experienced no episodes of decompensation. Doc. 14, at 19-20. Again, two problems exist. First, Dr. Kampschaefer based her opinion on Dr. Pilkington's December 2005 evaluation and Ms. McNair's career services findings. AR 1009. But the State agency physician did *not* consider Dr. Pilkington's March 2006 findings, *id.*, and as noted above, Ms. McNair is not an acceptable medical

source. Second, while the ALJ is free to resolve conflicts in the record, she must *explain* why she chose to rely on Dr. Kampschaefer's opinion over Dr. Pilkington's opinion. *See Quintero v. Colvin*, 567 F. App'x 616, 621 (10th Cir. 2014) ("[T]his brings us to a second problem: the ALJ provided no valid reason for choosing Dr. Valette's opinion over Dr. Vega's in those instances where the opinions differed."); *Reveteriano v. Astrue*, 490 F. App'x. 945, 947 (10th Cir. 2012) ("And, of course, to the extent there are differences of opinion among the medical sources, the ALJ must explain the basis for adopting one and rejecting another, with reference to the factors governing the evaluation of medical-source opinions set out in 20 C.F.R. []§ [404.1527(c)].").

### 3. Harmless error.

Finally, the Commissioner argues that the ALJ's error is harmless because the three jobs that the ALJ found Plaintiff could perform are "unskilled" and so "would more than account for any severe memory disorder." Doc. 14, at 20-21. The court may find an error harmless if it can "confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004). The undersigned finds that the ALJ's error is not harmless under this standard.

First, discussing similar mental limitations, the Tenth Circuit has reiterated that an ALJ's finding that a claimant has "a limitation to unskilled

9

work" is inadequate to convey actual work-related limitations. *Jaramillo v. Colvin*, 576 F. App'x 870, 874-77 (10th Cir. 2014). So, the ALJ's conclusion that Plaintiff could perform "unskilled" work, AR 21-22, is not adequate to convey Dr. Pilkington's findings that he has: (1) "very impaired" "visuoperceptual and constructional skills including visual memory," (2) impairments in "immediate memory and delayed memory," and (3) perceptual impairments.[4] *See also Craft v. Astrue*, 539 F.3d 668, 677-78 (7th Cir. 2008) ("We conclude that there is not an 'accurate and logical bridge' between the ALJ's recitation of the medical evidence and the decision to account for [claimant's] mental impairments by limiting him to unskilled work."); *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004) (limiting hypothetical to simple, unskilled work failed to "take into account" claimant's deficiencies in concentration, persistence, or pace).

Second, the ALJ found that Plaintiff could perform work as a food and beverage order clerk, Dictionary of Occupational Titles (DOT) #209.567-014, a new account interviewer, DOT #205.367-014, and a callout operator, DOT #237.367-014. AR 21. These jobs all involve level three reasoning, which requires "the ability to 'apply commonsense understanding to carry out [detailed] instructions furnished in written, oral, or diagrammatic form, and

---

[4] AR 410-11, 413.

deal with problems involving several concrete variables in or from standardized situations.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (citations omitted). The undersigned cannot confidently say that a reasonable administrative factfinder would find that Plaintiff could have performed these jobs after considering: (1) Dr. Pilkington's findings regarding Plaintiff's limitations, and (2) her opinions about the accommodations Plaintiff would need to succeed. *See, e.g., Thomas v. Barnhart*, 147 F. App'x 755, 760 (10th Cir. 2005) (noting the vocational expert's testimony "that individuals could not perform the unskilled, sedentary jobs he listed if 'problems with their short-term memory' caused them to 'have a hard time remembering instructions'").

### 4. Summary.

For the reasons discussed above, the undersigned finds that the Commissioner's arguments cannot overcome the ALJ's error.

## V. Recommendation and notice of right to object.

The ALJ impermissibly ignored significantly probative evidence and the undersigned finds that her error is not harmless. So, the undersigned recommends that the court reverse and remand the Commissioner's decision.

The undersigned advises the parties of their right to file an objection to the report and recommendation with the Clerk of this Court by February 26, 2015 in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).

The undersigned further advises the parties that failure to make a timely objection to the report and recommendation waives the right to appellate review of both factual and legal questions contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This report and recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 6th day of February, 2015.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE